In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3678

ROBERT GILBERT,

*Plaintiff-Appellant*,

*v.*

ILLINOIS STATE BOARD OF EDUCATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4699—**Robert M. Dow, Jr.**, *Judge.*

ARGUED SEPTEMBER 11, 2009—DECIDED JANUARY 11, 2010

Before EASTERBROOK, *Chief Judge*, and POSNER and WOOD,
*Circuit Judges.*

WOOD, *Circuit Judge.* From 1978 until July 1995, Robert
Gilbert worked as a social studies teacher at Palatine
High School, which was run by the Board of Education of
Township High School District 211 (the "District"). While
Gilbert was widely regarded for his skills in the
classroom, he continually sparred with colleagues and
school officials. Tired of the conflicts, the District dis-
charged Gilbert on July 12, 1995, citing his insubordination,

his acrimonious relationship with his colleagues, and his failure to complete a remediation plan.

Gilbert was convinced that the District lacked adequate cause to end his employment, and he fought to save his tenured position at a state administrative hearing. In the end, however, he was unsuccessful, first before the state administrative agency, then in state court, and finally in the district court. In dismissing or rejecting each complaint, the district court (acting first through Judge Guzmán and later through Judge Dow) relied on the *Rooker-Feldman* doctrine, absolute immunity, and a lack of standing. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983). Gilbert appeals to this court and contests the issue of standing and the applicability of *Rooker-Feldman*. We affirm.

**I**

After the District discharged Gilbert on July 12, 1995, Gilbert invoked his right as a tenured teacher to an administrative hearing convened by the Illinois State Board of Education ("ISBE"). Pursuant to the Illinois School Code, Gilbert was entitled to present witnesses and any other relevant evidence on his behalf. 105 ILCS 5/24-12 (2006). At the hearing, the school district proceeded first and presented its evidence over the course of 40 days. After the District rested its case, Gilbert filed a motion for "judgment in his favor." He understood this to be analogous to a motion in federal court for judgment as a matter of law. See FED. R. CIV. PRO. 50(a). On April 2, 2001, the hearing

officer granted Gilbert's motion on two alternative grounds and ordered his reinstatement.

The District filed a complaint seeking administrative review of the hearing officer's order in the Circuit Court of Cook County. On April 17, 2002, the circuit court rejected one of the bases for reinstatement, but it affirmed the decision on the alternate ground offered by the hearing officer. Proceeding up the chain of review, the District appealed to the Illinois Appellate Court. That court reversed and remanded "with directions to reinstate the District's termination of Gilbert from his employment." Concerned that these remand instructions left no room for reconvening his administrative hearing, Gilbert petitioned the appellate court for rehearing and clarification of the order. He argued that further proceedings were necessary before a final judgment was possible, and that an immediate order confirming the end of his employment would violate his due process rights under the United States Constitution. The appellate court denied Gilbert's petition.

Gilbert then filed a petition for leave to appeal with the Illinois Supreme Court, invoking Illinois Supreme Court Rule 315, which spells out the way to request discretionary review from that court. This petition was denied on March 24, 2004. Curiously, Gilbert did not try to use Illinois Supreme Court Rule 317, which permits appeals as a matter of right when a constitutional claim arises for the first time as a result of an appellate court decision. Nor did Gilbert ever file a petition for a writ of *certiorari* with the United States Supreme Court.

Instead, the case returned to the circuit court. On September 7, 2004, that court issued an order reinstating

the District's discharge of Gilbert. Believing that the Illinois Appellate Court's order foreclosed any further administrative proceedings, the judge denied Gilbert's request to remand to the hearing officer. The court suggested, however, that the ISBE might reconvene the hearing if it concluded that it possessed the authority to do so. Gilbert followed up on the suggestion, but the ISBE rebuffed him, stating that it no longer retained jurisdiction over the case. Gilbert did not file an appeal from the circuit court's order on remand, and so the Illinois Appellate Court was never asked whether the circuit court had properly construed the scope of the remand.

Gilbert turned instead to the federal courts and initiated the present case. After voluntarily dismissing his initial complaint, he filed a two-count amended complaint on May 23, 2005. The complaint named as defendants the ISBE, the individual members of the ISBE, the legal advisor to the ISBE, the District, the State of Illinois, the Illinois Circuit Court judge, and the two surviving Illinois Appellate Court judges. Count I asserted a due process claim and sought an injunction to reconvene the administrative hearing. Count II requested similar injunctive relief plus a declaration that the Illinois School Code and the Illinois administrative review laws in Gilbert's case violated his due process rights. On March 30, 2007, the district court granted defendants' motion to dismiss except with regard to Gilbert's claim for declaratory relief against the District. In addition to resolving some issues relating to the amenability of various defendants to suit, the court held that the *Rooker-Feldman* doctrine barred it from exercising jurisdiction over Gilbert's claim for injunctive relief.

A month later, Gilbert sought leave to file a four-count second amended complaint. This time Gilbert added the individual defendants in their official capacity and inserted a claim for damages. Concluding that the *Rooker-Feldman* doctrine barred Gilbert's claims no matter what form of relief he sought, the court denied Gilbert's motion on October 30, 2007. Nonetheless, it gave Gilbert one last chance by granting him leave to file a one-count third amended complaint to seek a declaratory judgment.

Gilbert took another bite at the apple and filed his third amended complaint requesting declaratory relief, damages, attorneys' fees, and any other form of relief the court found appropriate. (This was the point at which the case was moved from Judge Guzmán to Judge Dow.) Defendants filed a supplemental motion to dismiss, which the court granted on September 24, 2008. It concluded that Gilbert did not have standing to seek declaratory relief and rejected Gilbert's argument that the "law of the case" doctrine prevented it from deciding this jurisdictional question.

## II

On appeal, Gilbert challenges the dismissal of his complaints. Gilbert also attacks Judge Guzmán's denial of his motion for leave to file a second amended complaint. We review the former *de novo*, and the latter only for an abuse of discretion. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

A

For the most part, this case turns on the *Rooker-Feldman* doctrine. See *Rooker*, 263 U.S. at 415-16; *Feldman*, 460 U.S. at 486. These two decisions establish the proposition that the lower federal courts lack jurisdiction to review the decisions of state courts in civil cases. See *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 283-84 (2005); *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). Congress has granted the power to engage in appellate review of state court judgments only to the Supreme Court. See 28 U.S.C. § 1257; *Hemmer v. Indiana State Bd. of Animal Health*, 532 F.3d 610, 613 (7th Cir. 2008). The *Rooker-Feldman* principle prevents a state-court loser from bringing suit in federal court in order effectively to set aside the state-court judgment. See *Exxon Mobil*, 544 U.S. at 284. This jurisdictional bar applies even though "the state court judgment might be erroneous or even unconstitutional." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996). There are limits, however, to the reach of the doctrine. Though a lower federal court may not sit in review over a state court judgment, a federal court is free to entertain claims that are independent of any state court proceedings. See *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999) (noting that *Rooker-Feldman* does not bar "a federal claim alleging a prior injury that a state court failed to remedy"). Moreover, because the *Rooker-Feldman* doctrine is concerned only with state court determinations, it presents no jurisdictional obstacle to judicial review of executive action, including decisions made by state administrative agencies. See *Verizon Mary-*

*land, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 644 n.3 (2002).

Relying on *Rooker-Feldman*, the district court dismissed the due process claim in Gilbert's amended complaint for lack of subject-matter jurisdiction. Recall that Gilbert had alleged that this wide group of defendants had deprived him of his due process rights by failing to reconvene his hearing so that he could present his side of the case. The injury Gilbert claimed to have suffered, the court explained, flowed directly from the Illinois Appellate Court's decision. That court had ruled that the order ending Gilbert's employment was to be reinstated without any further administrative proceedings. With that in mind, the district court reasoned that granting Gilbert relief on his due process claim would require the federal court as a practical matter to reverse the Illinois Appellate Court's judgment. That is precisely what is forbidden by *Rooker-Feldman*. This rationale also lay behind the court's decision to deny Gilbert leave to file a second amended complaint raising essentially the same claims.

Betraying a fundamental misunderstanding about the structure of the parallel judicial systems in the United States, Gilbert argues that his case is independent of the state court actions and thus not barred by *Rooker-Feldman*, because the due process rights on which he relies are a creature of federal law and (he thinks) must be adjudicated in federal court. But that is not how the system works. Unless Congress has chosen to confer exclusive jurisdiction on the federal courts for a particular set of

cases—and it has not done that here—either the federal or the state courts are competent to adjudicate questions of federal law, including questions of constitutional law. State courts possess not only the authority but also the duty to enforce federal law. U.S. Const. art. VI, cl. 2. The Supreme Court has held that state-court judgments in § 1983 cases are subject, by virtue of the full faith and credit statute, 28 U.S.C. § 1738, to the ordinary rules of claim and issue preclusion in later federal-court cases. See *Allen v. McCurry,* 449 U.S. 90 (1980). Such a holding would be impossible if Gilbert's position were correct.

The remainder of Gilbert's arguments turn on the proper interpretation of the Illinois Appellate Court's decision and the way that the circuit court implemented it on remand. As Gilbert reads the appellate decision, that court did not mean to preclude further proceedings on remand, and both the state-court judge and the federal district court erred by assuming that it did. Properly read, Gilbert asserts (relying on *Coalfield Coal Co. v. Peck*, 105 Ill. 529 (1883)), it is apparent that the Illinois Appellate Court meant only to return matters to the *status quo ante*, before his hearing ever began.

The problem is that neither the district court nor this court is the proper tribunal to entertain that argument. A state court—the Circuit Court of Cook County—has already interpreted the appellate court's ruling, and that court concluded that the appellate court meant to rule on the merits of the District's decision to fire Gilbert. The circuit court had before it Gilbert's argument that the proceedings should be reopened, and it rejected

that position, finding that it would conflict with the mandate the court had been given from the appellate court.

Though the circuit court left open the possibility for Gilbert to address his request to the ISBE, the judge made it clear that judicial review of the original order was at an end. This may have been an erroneous interpretation of the Illinois Appellate Court's remand instructions. But Gilbert's remedy was to seek further clarification from the appellate court itself, not to go down the street to the federal court. Courts review judgments, not opinions, and there is no way that a federal court in the present case could accept Gilbert's due process claim and issue an injunction to reconvene his hearing without effectively reversing the appellate court's decision that further proceedings were not legally required. See *Orr*, 551 F.3d at 568. Therefore, even though Gilbert's injury stems ultimately from the District's decision, his immediate problem is the circuit court's order implementing the appellate court's mandate that the ISBE was "to reinstate the District's termination of Gilbert from his employment."

Gilbert finds this result harsh, because his evidence was not presented at the agency hearing, and the state courts (he asserts) did not squarely address his argument that this amounted to a denial of due process. There is an exception to the *Rooker-Feldman* doctrine that allows plaintiffs to litigate in the federal system if they were not afforded a "reasonable opportunity" to raise their claims in state court. See *Kelly v. Med-1 Solutions*, 548 F.3d 600, 605-06 (7th Cir. 2008); *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 564–65 (7th Cir.1986). This

exception, however, cannot help him. He presented his due process claim, albeit unsuccessfully, in his petition to the Illinois Appellate Court for rehearing and clarification of its order and in his petition for leave to appeal with the Illinois Supreme Court. Although both of these petitions were cursorily denied, Gilbert passed up his opportunity to appeal as a matter of right to the Illinois Supreme Court. See Ill. Sup. Ct. R. 317 (providing for appeals as a matter of right if a constitutional claim arises for the first time as a result of an appellate court decision). This is enough to demonstrate that Gilbert did have a "reasonable opportunity" to pursue his due process claim in Illinois state court. *Cf. Kelly*, 548 F.3d at 606-07; *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292-94 (7th Cir. 2007).

B

All that remains is for us to address Gilbert's argument that the district court erred when it dismissed his third amended complaint for declaratory relief. In order to understand this issue, a little background is in order. In his March 30, 2006, order dismissing most of Gilbert's amended complaint, Judge Guzmán chose not to dismiss Gilbert's claim for declaratory relief. Later, on October 20, 2007, Judge Guzmán denied Gilbert leave to file a second amended complaint but granted him a chance to file a third amended complaint limited solely to a claim for a declaratory judgment. Gilbert took advantage of this opportunity and filed a complaint alleging that certain provisions of the Illinois School Code and the Illinois Administrative Code are void for vagueness. After Gilbert

filed that iteration of the complaint, the case was transferred to Judge Dow. Defendants soon thereafter filed a motion to dismiss in which they argued that Gilbert lacked standing to seek declaratory relief. Judge Dow granted that motion and dismissed the case.

Gilbert contends that Judge Dow's ruling violated the law-of-the-case doctrine. Looking at matters from the perspective of the district court, law-of-the-case principles are applicable when a case is transferred to a new judge midway through litigation; in general, the successor judge is discouraged from reconsidering the decisions of the transferor judge. See *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). The successor judge should depart from the transferor judge's decision only "if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *HK Systems, Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) (quoting *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)). Since Judge Guzmán specifically permitted Gilbert to file a complaint seeking declaratory relief, Gilbert contends that Judge Guzmán must have concluded that whatever Gilbert came up with in the new complaint was necessarily justiciable. Thus, Gilbert concludes, Judge Dow erred when he did not defer to Judge Guzmán's apparent decision.

But Gilbert's argument loses sight of the critical shift in perspective that occurs when it is the appellate court reviewing what happened before the district court. As we noted in *Williams v. C.I.R.*, 1 F.3d 502 (7th Cir. 1993),

"[a]t that point, if rulings by the district court on issues of law are challenged the question is not whether the second judge should have deferred to the ruling of the first judge, but whether that ruling was correct." *Id.* at 503. The issues before us are exclusively questions of law, and thus, exercising *de novo* review, we must decide only whether the ultimate result reached in the district court was the right one. Since Gilbert has not challenged the correctness of Judge Dow's ruling, there is nothing more we need say on the matter.

For the sake of completeness, however, we note that there is a second reason why Gilbert's law-of-the-case argument is doomed. Judge Dow correctly pointed out that successor [district] judges are "significantly less constrained by the law of the case doctrine with respect to jurisdictional questions." *O'Sullivan v. City of Chicago*, 396 F.3d 843, 849-50 (7th Cir. 2005) (quoting *Shakman v. Dunne*, 829 F.2d 1387, 1399 (7th Cir. 1987)). In addition to that point (which flows from the fact that jurisdictional questions must always be addressed), it is also true that the law-of-the-case doctrine does not come into play when the transferor judge never decided the precise issue that is before the successor judge. See *FMS, Inc. v. Volvo Const. Equipment North America, Inc.*, 557 F.3d 758, 762-63 (7th Cir. 2009). Here, Judge Guzmán neither approved Gilbert's new complaint in advance nor focused on justiciability. Nothing in the law-of-the-case doctrine therefore barred Judge Dow from addressing this fundamental objection to Gilbert's complaint. *Cf. Jezierski v. Mukasey*, 543 F.3d 886, 888 (7th Cir. 2008) (noting that a court's decision that addresses the merits

of a case without discussing jurisdiction does not bind future courts' jurisdictional analysis). Judge Dow concluded that Gilbert's complaint failed to state an injury that was redressable, since subsequent events had cured whatever ambiguity there may have been in the state's procedures. He noted as well that a federal court cannot issue a declaratory judgment "because *someone* may be affected by the provisions, if that someone is not the current Plaintiff."

\* \* \*

We AFFIRM the judgment of the district court.